ELIZABETH YU
Senior Counsel
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, D.C.  20044-7611
(202) 305-5950

J. ANDREW RUYMANN
Chief, Civil Division
District of New Jersey
United States Attorney's Office
970 Broad Street, 7th Floor
Newark, New Jersey 07102
(973) 645-2756

<div align="center">

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

</div>

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| KAYDON ACQUISITION XI, INC., | ) | **COMPLAINT** |
| K. HOVNANIAN PORT IMPERIAL URBAN | ) | |
| RENEWAL, INC., and | ) | |
| HOVNANIAN ENTERPRISES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorney, acting at the request of the Regional Counsel of the United States Environmental Protection Agency ("EPA") for Region 2, files this complaint and alleges as follows:

<div align="center">

**NATURE OF THE ACTION**

</div>

1.      This is a civil action brought pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act, as amended, ("CERCLA"), 42

U.S.C. § 9607.  In this action, the United States seeks the recovery of certain costs incurred in response to releases and threatened releases of hazardous substances into the environment at or from the M.C. Canfield Sons Co. Site ("Site") located in Newark, New Jersey.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action and over the parties under 28 U.S.C. §§ 1331 and 1345 and Sections 107 and 113(b) of CERCLA, 42 U.S.C. §§ 9607 & 9613(b).

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases or threatened releases of hazardous substances that gave rise to this claim occurred in this district, and because the Site is located in this district.

## DEFENDANTS

4.      Kaydon Acquisition XI, Inc. ("Kaydon Acquisition"), a corporation organized under the laws of the state of Delaware, is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

5.      K. Hovnanian Port Imperial Urban Renewal, Inc. ("Port  Imperial"), a corporation organized under the laws of the state of New Jersey, f/k/a K. Hovnanian at Newark Urban Renewal Corporation III, Inc., is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

6.      Hovnanian Enterprises, Inc. ("Hovnanian"), a corporation organized under the laws of the state of Delaware, is a "person" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## STATUTORY BACKGROUND

7.     CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants, and for funding the costs of such abatement and related enforcement activities, which are known as "response" actions, 42 U.S.C. §§ 9604(a), 9601(25).

8.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this Section –

(2)     any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

*     *     *

shall be liable for –

(A)     all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the National Contingency Plan . . .

## GENERAL ALLEGATIONS

9.     The Site is located within the Society Hill at University Heights III condominium complex which is bounded by Norfolk, Wickliff, West Market, and Warren Streets in the City of Newark, Essex County, New Jersey.

10.     The M.C. Canfield Sons Company ("M.C. Canfield Sons"), a corporation organized under the laws of the state of New Jersey, conducted solder and metal manufacturing operations at the Site from approximately the 1870s to 1974.

11.     The M.C. Canfield Sons operations at the Site included lead smelting.

12.   The M.C. Canfield Sons operations resulted in the disposal of hazardous substances at the Site, including contamination of soil with lead.

13.   M.C. Canfield Sons was also the owner of the facility property at the Site ("M.C. Canfield property") at which it conducted its operations until approximately 1974.

14.   M.C. Canfield Sons changed its name to Canfield Technologies, Inc. ("Canfield Technologies") in 1996.

15.   In 2000, Kaydon Acquisition acquired the business of Canfield Technologies, then operating in Sayreville, New Jersey.

16.   After Kaydon Acquisition acquired the business of Canfield Technologies, the corporate status of Canfield Technologies was revoked for failure to pay state corporation fees.

17.   As part of its acquisition of the business of Canfield Technologies, Kaydon Acquisition acquired the rights to the Canfield Technologies name, continued to operate the same business under the Canfield Technologies name, in the same location with the same employees and management, and assumed the business liabilities necessary to keep operating.

18.   A principal owner of Canfield Technologies, Robert McIntire, continued to manage the business under the Canfield Technologies name, after its acquisition by Kaydon Acquisition, as President, and he was provided an ownership interest through stock options which he exercised in the corporation that controlled Kaydon Acquisition.

19.    Canfield Technologies' Vice President, Kenneth Walsh, also continued to manage the business under the Canfield Technologies name after its acquisition by Kaydon Acquisition.

20.   Kaydon Acquisition is a successor to M.C. Canfield Sons under corporate successorship principles, including name change and de facto merger.

21.     In 1974, M.C. Canfield Sons transferred the M.C. Canfield property in Newark to Salem Trucking, Inc., and moved the M.C. Canfield Sons business to Union, New Jersey.

22.     In 1976, the City of Newark foreclosed on the M.C. Canfield property for failure to pay taxes.

23.     In 1993, the City of Newark transferred the M.C. Canfield property and several other surrounding lots at the Site to Port Imperial.

24.     Port Imperial was Hovnanian's instrumentality for redevelopment of the M.C. Canfield property and other surrounding lots at the Site into a residential condominium complex, which is referred to as the Society Hill at University Heights III condominium complex.

25.     As part of the redevelopment activities, Port Imperial conducted demolition, excavation, and grading activities at the Site.

26.     The Port Imperial redevelopment activities resulted in the movement and disposal of soils contaminated with hazardous substances, including lead, within the Site.

27.     Port Imperial was a direct or indirect subsidiary of Hovnanian.

28.     The boards of directors of Hovnanian and Port Imperial had overlapping membership.

29.     Port Imperial did not have any employees during the period of redevelopment of the Site.  Instead, all the individuals who directed redevelopment of the Site were employed by Hovnanian or another subsidiary of Hovnanian, not employees of Port Imperial.

30.     Individuals who worked on the Site redevelopment also worked for several other subsidiaries or affiliates of Hovnanian.  These individuals identified themselves as working for Hovnanian's other subsidiaries or affiliates when working on matters relating to Port Imperial's operations, resulting in vendors and contractors sending invoices for work at the Site to different subsidiaries or affiliates under the Hovnanian umbrella.

31.     Port Imperial was thinly capitalized and dependent on Hovnanian for funding through a revolving credit agreement.

32.     Port Imperial was and is a mere instrumentality of Hovnanian, and Hovnanian is derivatively liable for Port Imperial under piercing the corporate veil principles.

33.     After an inquiry about former lead smelting operations in New Jersey, the New Jersey Department of Environmental Protection ("NJDEP") personnel conducted soil sampling in March 2012 to determine if metal contamination associated with past smelting operations at the Site was present in soil above New Jersey's Soil Remediation Standards at the Site.  NJDEP found elevated lead contamination in surface soils ranging from 753 parts per million ("ppm") to 4,860 ppm, after which NJDEP requested EPA's assistance with regard to the Site.

34.     In 2012 and 2013, EPA conducted further sampling efforts to assess the lead contamination at the Site, to determine eligibility for a removal action under CERCLA, and to determine an appropriate scope and approach for a removal action.  The sampling revealed that the highest concentrations of lead were found around the location of the previous M.C. Canfield Sons smelter, including lead concentrations ranging up to 13,000 ppm.  The results showed the presence of areas of contamination at the Site well above the residential soils screening level for lead of 400 ppm.

35.     The presence of lead at the condominium complex posed a significant risk to human health because of the potential for contact with and ingestion of lead-contaminated soils by residents, especially children.

36.     Based on the sampling and removal assessment, EPA determined that a release of a CERCLA hazardous substance had occurred and that a removal action was warranted to provide protective measures to eliminate the threat of direct human contact with lead-

contaminated soils above 400 ppm at the Site and to prevent the off-site migration of lead-contaminated soil.

37.     Following the assessment, EPA conducted a removal action at the Site that included excavation of lead-contaminated soils and backfilling of excavations with clean fill, disposal of lead-contaminated soil off-site at authorized facilities, post-mitigation sampling, and site restoration.

38.     The Site is a "facility" as defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

39.     "Disposal" is defined under Section 101(29) of CERCLA, 42 U.S.C. § 9601(29), to include the discharge, deposit, injection, dumping, spilling, leaking or placing of materials including hazardous substances into or on any land or water such that they may enter the environment.

40.     There has been a "release" or a "threatened release" of "hazardous substances" into the "environment" at or from the Site, as those terms are defined in Section 101 of CERCLA, 42 U.S.C. § 9601.

41.     In undertaking response actions to address the release or threat of release of hazardous substances at the Site, EPA has incurred and will continue to incur "response costs" as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

42.     EPA has incurred at least $2,882,212.66 through November 30, 2021, in response to the Site.

43.     The response costs incurred by EPA in connection with the Site were incurred in a manner not inconsistent with the National Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, and codified at 40 C.F.R. Part 300.

## CLAIM FOR RELIEF

44.     Paragraphs 1 through 43 are re-alleged and incorporated herein by reference.

45.     Kaydon Acquisition is liable under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), as the successor to Canfield Technologies (f/k/a M.C. Canfield Sons), which owned and/or operated a facility at the Site at a time of disposal of hazardous substances at its facility at the Site, for the response costs incurred by the United States at the Site.

45.     Port Imperial is liable under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), as the owner and/or operator of property at the Site at a time of disposal of hazardous substances at its property at the Site, for the response costs incurred by the United States at the Site.

46.     Hovnanian is derivatively liable under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), for the liability of Port Imperial with respect to the Site.

47.     Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), Kaydon Acquisition, Port Imperial, and Hovnanian are jointly and severally liable to the United States for all response costs incurred by the United States, including enforcement costs and interest, relating to the Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court:

a.  Enter judgment in favor of the United States and against the Defendants, jointly and severally, for all response costs incurred by the United States relating to the Site, including enforcement costs and prejudgment interest, pursuant to Section 107(a)(4)(A) of CERCLA, 42 U.S.C. § 9607(a)(4)(A);

b. Enter a declaratory judgment on Defendants' liability that will be binding in any subsequent action for further response costs or for natural resource damages, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2); and

c. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

THOMAS A. MARIANI, JR.
Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

s/ Elizabeth Yu
ELIZABETH YU
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
(202) 305-5950
elizabeth.yu@usdoj.gov

PHILIP R. SELLINGER
United States Attorney
District of New Jersey

J. ANDREW RUYMANN
Chief, Civil Division
District of New Jersey
United States Attorney's Office
970 Broad Street, 7th Floor
Newark, New Jersey 07102
(973) 645-2756

OF COUNSEL:

CLARA BEITIN
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway, 17th Floor
New York, NY 10007-1855
(212) 637-4382

<u>CERTIFICATION UNDER LOCAL CIVIL RULE 11.2</u>

      In accordance with 28 U.S.C. § 1746, I hereby certify, under penalty of perjury, that the matter in controversy in the foregoing Complaint is not the subject of any other action pending in any court, or any pending arbitration or administrative proceeding.

<div style="margin-left: 3em;">

s/ Elizabeth Yu
ELIZABETH YU
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
(202) 305-5950
elizabeth.yu@usdoj.gov

</div>